**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

CONAIR CORP. & BABYLISS FACO SPRL,

Plaintiffs,

vs.

LE ANGELIQUE, INC.,

Defendant.

Case No.: 2:14-CV-01149-RCJ-PAL

**ORDER**

This proceeding arises out of the alleged violation of a corporation's intellectual property rights by a competing manufacturer and retailer. Pending before the Court is an Emergency Motion for a Temporary Restraining Order ("TRO") (ECF No. 12). For the reasons given herein, the Court grants the motion.

**I. FACTS AND PROCEDURAL HISTORY**

Plaintiffs Conair Corporation and its subsidiary, Babyliss FACO SPRL, (collectively, "Conair") make a hair-curling tool marketed and sold under the names "Miracurl" and "Curl Secret." (Compl. ¶¶ 4, 5, 7–8, July 13, 2014, ECF No. 1). Conair obtained United States Design Patent No. D696,456 (filed Apr. 9, 2013) ("design patent") on the tool's design in December 2013 in addition to various utility patents. (*Id.* ¶¶ 4–5). Conair seeks to temporarily restrain a

competitor, Le Angelique, Inc., from selling and marketing a hair-curling tool named "EasyCurl" on the grounds it infringes on Conair's design patent and trade dress.

**A. Conair's Patented Design**

Conair's design patent is for the ornamental design of the Miracurl and Curl Secret hair-curling tools. (*See* Stockman Decl. Ex. E, July 15, 2014, ECF No. 12, at 39). Conair describes its design as a "round bulbous clam-shell head [attached to a] sleek handle." (Compl. ¶ 11). According to Conair, the Miracurl and Curl Secret hair-styling tools are "nearly identical," except that Miracurl's trade dress is aqua/teal and has three buttons while Curl Secret's trade dress is dark purple with two buttons. (*Id.*). Conair has experienced success with the Miracurl and Curl Secret and sells tools worldwide. (*Id.* ¶ 8). Conair markets its products on its websites and the products sell for around $180 for the Miracurl and $100 for the Curl Secret. (Stockman Decl. ¶¶ 10, 13, ECF No. 12, at 22).

**B. Le Angelique's Design**

Conair learned that Le Angelique was marketing the EasyCurl hair-styling tool at the CosmoProf beauty trade show in Las Vegas, Nevada on July 13, 2014. (*Id.* ¶ 10). Conair asserts that the EasyCurl's design is "confusingly similar" to Conair's patented design. (Compl. ¶ 9). Conair also complains that Le Angelique wrongfully copied Conair's trade dress in its marketing of the EasyCurl. (*Id.* ¶ 14). Le Angelique sells the EasyCurl, among other products, on its website. (*Id.* ¶ 9). The advertised price for the EasyCurl is under $90. (Stockman Decl. ¶ 13).

**C. The Present Case**

On July 13, 2014, Conair sued Le Angelique in this Court for: (1) utility patent infringement, (2) design patent infringement, (3) federal trade dress infringement/unfair

competition in violation of 15 U.S.C. § 1125(a), and (4) common law trademark infringement. On July 14, 2014, Conair filed an Emergency Motion for an Ex Parte Temporary Restraining Order to immediately restrain Le Angelique from marketing and selling the EasyCurl, including stopping Le Angelique from marketing and selling the device for the duration of the three-day Las Vegas show. The Court denied Conair's ex parte motion and ordered that Conair proceed with a noticed motion to Le Angelique. Conair served Le Angelique with notice of the Complaint and Emergency Motion for Temporary Restraining Order ("TRO") on July 15, 2014. Conair's motion relies solely on the alleged infringement of Conair's design patent and trade dress. Le Angelique has not answered the Complaint nor opposed the instant motion for a TRO.

## II. LEGAL STANDARD

To obtain a temporary restraining order Under Fed. R. Civ. P. 65(b), a plaintiff must make a showing that immediate and irreparable injury, loss, or damage will result to plaintiff without a temporary restraining order. Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001) ("The standard for issuing a preliminary injunction is the same as the standard for issuing a temporary restraining order."). The standard for obtaining *ex parte* relief under Rule 65 is very stringent. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). The temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974).

The Court of Appeals in the past set forth two separate sets of criteria for determining whether to grant preliminary injunctive relief:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Id.*

The Supreme Court recently reiterated, however, that a plaintiff seeking an injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7, 19-23, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test). The Court of Appeals has recognized that the "possibility" test was "definitively refuted" in *Winter*, and that "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374) (reversing a district court's use of the Court of Appeals' pre-Winter, "sliding-scale" standard and remanding for application of the proper standard).

A Court of Appeals ruling relying largely on the dissenting opinion in *Winter* parsed the language of *Winter* and subsequent Court of Appeals rulings and determined that the sliding

scale test remained viable when there was a lesser showing of likelihood of success on the merits amounting to "serious questions," but not when there is a lesser showing of likelihood of irreparable harm. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011). *Cottrell* presents some difficulty in light of *Winter* and prior Court of Appeals cases. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Selecky*, *Selecky* controls. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (holding that, in the absence of an intervening Supreme Court decision, only the en banc court may overrule a decision by a three-judge panel). In any case, the Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citing *Munaf v. Geren*, 553 U.S. 674, 128 S. Ct. 2207, 2218-19, 171 L. Ed. 2d 1 (2008); *Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982)) (emphases added). The test is presented as a four-part conjunctive test, not as a four-factor balancing test, and the word "likely" modifies the success-on-the-merits prong in exactly the same way it separately modifies the irreparable-harm prong. In rejecting the sliding-scale test, the *Winter* Court emphasized the fact that the word "likely" modifies the irreparable-injury prong, *see id.* at 22, and the word modifies the success-on-the-merits prong the same way, *see id.* at 20. In dissent, Justice Ginsburg opined that she did not believe the Court was abandoning the rule that it was permissible to "award[ preliminary injunctive] relief based on a lower likelihood of harm when the likelihood of success is very high." *Id.* at 51 (Ginsburg, J., dissenting). But Justice Ginsburg,

like the majority, did not address whether she believed relief could be granted when the chance of success was *less than* likely. A "lower likelihood" is still *some* likelihood. We are left with the language of the test, which requires the chance of success on the merits to be at least "likely."

In summary, to satisfy *Winter*, a movant must show that he is "likely" to succeed on the merits. According to a layman's dictionary, "likely" means "having a high probability of occurring or being true." Merriam—Webster Dictionary, http://www.merriam-webster.com/dictionary/likely. Black's defines the "likelihood-of-success-on-the-merits test" more leniently as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1069 (10th ed. 2014). The Court must reconcile the cases by interpreting the *Cottrell* "serious questions" requirement to be in harmony with the *Winter/Selecky* "likelihood" standard, not as being in competition with it. "Serious questions going to the merits" must therefore mean that there is at least a reasonable probability of success on the merits. "Reasonable probability" appears to be the most lenient position on the sliding scale that can satisfy the requirement that success be "likely."

## III. ANALYSIS

### A. Likelihood of Success on the Merits

To obtain the TRO, Conair must first show that it is likely to succeed on the merits of either the design patent or trade dress infringement claim.

#### 1. Design Patent Infringement

The purpose of a design patent is to "protect[] the novel, ornamental features of the patented design." *OddzOn Prods. v. Just Toys*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). A design patent infringement claim is analyzed under the "ordinary observer test":

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (quoting *Gorham Co. v. White*, 81 U.S. 511, 528 (1871)). An infringing product will "embod[y] the patented design or any colorable imitation thereof." *Id.* at 678 (quoting *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116–17 (Fed. Cir. 1998)). Minor dissimilarities will not defeat a design patent infringement claim if, in consideration of the whole design, an ordinary observer views them as substantially the same. *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (quoting *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993)).

To analyze a design infringement claim, the patent drawings are compared to images of the accused design. *See Hupp v. Siroflex of Am.*, 122 F.3d 1456, 1464 (Fed. Cir. 1997) (noting the lack of written description in a design patent). "[W]hen the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will [also] benefit from a comparison of the claimed and accused designs with the prior art . . . ." *Egyptian Goddess*, 543 F.3d at 678. An "ordinary observer" is presumed familiar with the prior art and can judge the similarity of the designs with a frame of reference. *Id.* at 677. The burden is on the alleged infringer to produce evidence of prior art to compare. *Id.* at 678–79.

The Court relies on drawings and images submitted by Conair in its Complaint and motion to compare Conair's patented design with Le Angelique's allegedly infringing design. Based on the drawings Conair submits, the Court briefly characterizes Conair's patented design

for the Miracurl and Curl Secret as follows:[1] The design includes a rounded cylinder-shaped enclosure at one end and a tube-shaped shaft that connects the cylinder with the power cord at the other end. The cylinder is split so that it partially "opens up" and when open, the cylinder looks somewhat like a sea-shell, with spirals out to its outer edges.

Based on the images Conair provides of Le Angelique's EasyCurl tool, the Court finds that the EasyCurl design also contains a rounded cylinder-shaped enclosure at one end of the device. Its handle is tube-shaped. The cylinder also appears to "open" with a sea-shell-like appearance.

The Court concludes that under the ordinary observer test, there is a reasonable probability of success of Conair's design patent infringement claim. On the whole, the ornamental design of Conair's design patent and Le Angelique's allegedly infringing design are similar enough to cause a reasonable probability of confusing an ordinary observer in the marketplace. Each hair-styling tool contains the shell-shaped enclosure at one end and a long, sleek handle at the other. The proportions of the designs appear similar.

Moreover, Conair provides some evidence that its design is significantly new in the marketplace, advertising itself as the maker of "the world's first fully automatic professional curl machine." (Stockman Decl. Ex. B, ECF No. 12, at 31). Familiar with the prior art in the hair-styling tool industry, there is a reasonable probability that an ordinary observer would view these two "innovative" hair-styling tools as substantially similar in design.

---

[1] The district court, in interpreting the scope of a design patent, need not provide a verbose description of the patented product and may instead, in its discretion, rely on drawings and images. *Egyptian Goddess*, 543 F.3d at 679 ("[T]he preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design.").

Conair, therefore, meets the first element of obtaining a TRO by showing a likelihood of success on the merits of the design patent infringement claim.

**2. Trade Dress Infringement Claim**

Section 43 of the Lanham Act protects against trade dress infringement as a form of unfair competition. 15 U.S.C. § 1125(a). "Trade dress refers to the total image of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Disc Golf Ass'n v. Champion Discs*, 158 F.3d 1002, 1005 n.3 (9th Cir. 1998) (quoting *International Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). Trade dress is infringed if: "(1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Enter. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (quoting *Disc Golf Ass'n*, 158 F.3d at 1005).

The Court finds there is a reasonably probability that Conair's trade dress has been infringed. Its trade dress of the Miracurl and Curl Secret appears nonfunctional, as the exterior, primarily the sea-shell shaped cylinder at one end of the device, is not a mechanism that actually curls the hair. The Court also concludes it is likely that Conair's trade dress has acquired secondary meaning given that, according to Conair, the shape of the Miracurl and Curl Secret had not previously existed in the marketplace. *See Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 873 (9th Cir. 2002) (quoting *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 911 (9th Cir. 1995)) (defining secondary meaning as "a mental recognition" in prospective purchasers minds "that products connected with the [trade dress] are associated with the same source"). Last, based on the analysis of the design patent

infringement claim, the Court concludes there is a reasonable probability that the similarity between the trade dress of Conair's design and Le Angelique's allegedly infringing trade dress would confuse a consumer in the marketplace.

Therefore, Conair also meets the first element of obtaining a TRO by demonstrating a likelihood of success on the merits of the trade dress infringement claim.

**B. Likelihood of Irreparable Injury**

Conair argues that irreparable injury occurs without a temporary restraining order based on the following: Conair cannot protect its property rights by excluding Le Angelique from marketing and selling a design that is substantially similar to Conair's patented design; Conair is forced to compete against Le Angelique's infringing design; Conair may lose prospective customers or goodwill as a result of Le Angelique selling an infringing design; Conair's reputation may be tarnished if Le Angelique's allegedly inferior products continue to confuse customers; and the market for Conair's patented design may experience price erosion due to Le Angelique selling their designs for less.

Case law supports finding an irreparable injury for these types of harm. *See Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–45 (Fed. Cir. 2013) (lost sales, competition, damage to reputation); *Presidio Components, Inc. v. Am. Technical Ceramics Corp.*, 702 F.3d 1351, 1362–63 (Fed. Cir. 2012) (loss of property rights); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) (price erosion, loss of goodwill).

Without a TRO, Conair will be forced to compete against Le Angelique, who is selling a confusingly similar design at a lower price. This is enough to meet the threshold showing of likelihood of irreparable injury.

**C. Balance of the Equities**

A balance of the equities favors Conair. According to Conair, a TRO will not put Le Angelique out of business because Le Angelique sells several products—not just the allegedly infringing EasyCurl hair-curling tool. Conair, on the other hand, stands to lose its foothold in a market where it owns an exclusive right to market and sell the patented design.

**D. Advancing the Public Interest**

Protecting patents is in the public interest. *See Douglas Dynamics*, 717 F.3d at 1346 ("[T]he public has a greater interest in acquiring new technology through the protections provided by the Patent Act than it has in buying 'cheaper knock-offs.'"). The Court concludes that protecting design patents and trade dress promotes artistic innovation and similarly weighs in the public interest.

The Court therefore grants the Emergency Motion for Temporary Restraining Order (ECF No. 12) and enjoins Le Angelique from selling and marketing the EasyCurl hair-curling tool.

///

///

///

///

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that the Emergency Motion for Temporary Restraining Order (ECF No. 12) is GRANTED.

IT IS FURTHER ORDERED that Le Angelique, Inc. refrain from selling, displaying, or otherwise marketing the "EasyCurl" hair-curling tool. This Order extends to display at beauty trade shows, website marketing, retail sales, wholesale sales, or through any other channel of commerce.

IT IS FURTHER ORDERED that this Order shall expire at 9:00 a.m. PDT on September 29, 2014.

IT IS SO ORDERED.

DATED and ISSUED this 15th day of September, 2014 at 4:00 P.M. (PDT).

ROBERT C. JONES
United States District Judge